UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GRINNELL SELECT INSURANCE COMPANY, a corporation,<br><br>      Plaintiff,<br><br>  v.<br><br>BRIA GLODO and LARRY KEOWN,<br><br>      Defendants. | Case No. 08-cv-891-JPG |
| LARRY KEOWN,<br><br>      Counter Claimant,<br><br>  v.<br><br>GRINNELL SELECT INSURANCE COMPANY, a corporation,<br><br>      Counter Defendant. | Case No. 08-cv-891-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant/Counter Claimant Larry Keown's Motion for Judgment on the Pleadings (Doc. 21) and Memorandum of Law in Support thereof (Doc. 22). Plaintiff/Counter Defendant Grinnell Select Insurance Company filed its Response (Doc. 28), and Keown filed a Reply (Doc. 29). For the following reasons, the Court **GRANTS** the instant motion (Doc. 21) and **ORDERS** additional briefing regarding the monetary extent of Grinnell's duty to indemnify.

# BACKGROUND

## I. Judgment on the Pleadings Standard

A motion for judgment on the pleadings permits a party to move for judgment after the parties have filed the complaint and the answer. Fed. R. Civ. P. 12(c). The pleadings closed, and Keown subsequently filed this motion in a timely manner.

The Court employs the same standard in deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as it does in deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). All factual allegations in the plaintiff's complaint must be accepted as true, and the Court must draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Pisciotta*, 499 F.3d at 633. The Court may consider a plaintiff's brief demonstrating how he could make out a claim consistent with the facts alleged in his complaint, even though the substance of the brief is not included in the complaint. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997). The Court will grant a motion for judgment on the pleadings if "it appears beyond all doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

## II. Facts

None of the following facts are in dispute and are contained within the Complaint (Doc. 2) and Answer and Counterclaim (Doc. 14).

Larry Keown (Keown) and Brett Glodo (Brett) were involved in an auto collision that resulted in Keown being seriously injured. At the time of the accident, Brett was driving a

pickup truck owned by his father-in-law, Terry Ernsting (Ernsting). Ernsting had allowed his daughter, Bria Glodo (Bria), to use the truck, even though she did not live with her father at the time. Even though Ernsting did not expressly permit his daughter to allow anyone else to use the truck, Bria allowed her husband, Brett, to use it.

Brett did not have a valid driver's license, and Bria was not with him at the time of the accident. Keown brought an action in tort against Bria, Brett, and Ernsting in the Circuit Court for Jackson County, Illinois. On December 5, 2008, Keown obtained a jury verdict in his favor in the amount of $600,000 against Bria and Brett. Specifically, the jury found that Bria had negligently entrusted her father's vehicle to Brett. Ernsting was not found liable.

Grinnell had issued an automobile insurance policy on the truck to Ernsting with a policy limit of $300,000. During the pendency of the Jackson County action, Grinnell obtained a declaratory judgment stating that the insurer had no duty to defend or indemnify Brett on grounds that he did not have a valid driver's license at the time of the accident. Eventually, Grinnell filed suit in this case against Keown and Bria, seeking another declaratory judgment. This time, the declaratory judgment sought would state Grinnell had no duty under Ernsting's policy to indemnify Bria nor any duty to Keown, her judgment creditor. Keown answered and filed a counterclaim for declaratory judgment stating Grinnell had a duty to indemnify Bria, which would subsequently satisfy Keown's judgment.

Following the Court's realignment of actions concerning the foregoing facts, we are left with the instant case, where declaratory judgment is still sought by both Grinnell and Keown and Keown presently seeks judgment on the pleadings. The question before the Court is whether Grinnell must indemnify Bria for the Jackson County jury verdict of $600,000. The specific portion of the insurance policy at issue is as follows:

3

PART A - LIABILITY COVERAGE

INSURING AGREEMENT

A. [Grinnell] will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.

B. "Insured" as used in this Part means:

1. [Ernsting] or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

(Doc. 2, Exhibit #4).  Keown argues that Bria constitutes Grinnell's insured for two reasons: 1) Bria "used" the truck in accord with the express language of the policy by allowing her husband to drive it; and, 2) Bria was "responsible for the use of" the truck pursuant to the Illinois omnibus requirement.  Grinnell refutes both of these assertions. Of course, whether Bria stands as an insured will dictate whether Grinnell must indemnify her and whether Keown's damages will thereby be compensated.

## ANALYSIS

Illinois law, which controls this case, "treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily." *Roman Catholic Diocese of Springfield in Ill. v. Maryland Casualty Co.*, 139 F.3d 561, 565 (7th Cir. 1998).  Judgment on the pleadings is only appropriate where "it is clear from the face of the underlying complaint that the allegations [do or] do not even potentially fall within the scope of the policy." *Maryland Casualty,* 139 F.3d at 565.

Judgment on the pleadings motions in the realm of insurance law often turn on the construction of relevant insurance policies.  When construing an insurance policy, if any

4

ambiguity exists, the ambiguity must be construed in favor of the insured. *Johnson v. Davis*, 883 N.E.2d 521, 527 (Ill. App. Ct. 2005). To determine if an ambiguity exists, the Court must ask whether the policy, taken as a whole and reading all parts in light of the other parts, is susceptible to more than one reasonable interpretation. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).

**I.     The Explicit Terms of Grinnell's Insurance Policy Do Not Necessitate Coverage**

As aforesaid, at issue is whether Bria "used" her father's truck in allowing her husband to drive it, thereby falling within the policy's definition of insured. In Illinois, when a liability insurance policy extends to persons using the covered automobile, "the word 'use' is much broader than the term 'operate' or 'drive' . . . [as] one can use a motor vehicle without operating it." *Orrill v. Garrett*, 241 N.E.2d 1, 3 (Ill. 1968). Use includes "operation" or "control of operation" of the vehicle. *Pekin Ins. Co. v. Fidelity & Guar. Ins. Co.*, 830 N.E.2d 10, 15 (Ill. App. Ct. 2005); *Thomas v. Aetna Cas. & Sur.* Co., 328 N.E.2d 374, 377 (Ill. App. Ct. 1975).

This expanded understanding of use is given further distinction throughout Illinois case law. Recently, the Fourth District held that a tow truck's insurance policy may cover a towed van's owner and driver through a use clause similar to that in the instant case. *Pekin*, 830 N.E.2d at 18. Specifically, the *Pekin* court reasoned that "towing as a 'use' extends to activities *directly relating* to the preparation for such towing or the termination thereof," which included the van driver's alleged negligence in attaching the van for towing. *Id*. (emphasis added). As another example, an employee's hand signaling, in an effort to direct a truck, did not constitute use of the truck by the employee for purposes of the truck insurer's duty to defend. *Apcon Corp. v. Dana Trucking, Inc.*, 623 N.E.2d 806, 807 (Ill. App. Ct. 1993).

5

Here, the Court acknowledges Illinois' broad understanding of use to include control or operation of control of a vehicle; nevertheless, the Court does not see fit to expand use to Bria's relationship to the date of her husband's accident. Bria was not operating the truck at the time of the accident nor was she even in the vehicle. In this context, it can hardly be said that use is an ambiguous term. Even if one were to construe use as ambiguous, relevant precedent dictates the same result.

According to Keown, Bria did not need to be near the truck to use it; however, he cites no case law to that effect. Keown attempts to paint analogy to *Pekin*, but the *Pekin* court made clear that a finding of use hinged on activities that directly related to the towing process. It cannot be said that Bria's authority regarding the truck's operation directly related to use of it in a manner sufficiently similar to *Pekin*, where the user negligently hitched the tow truck to his vehicle. Keown further argues that *Apcon* bears little resemblance to this case. In *Apcon*, the court held that a hand-signaling employee was not using the truck that he was directing. Unlike *Apcon*, Bria was nowhere near her husband at the time of his accident, yet Keown asks us to ignore that holding and find that she was using the truck anyway. This is something the Court will not do.

Finally, Keown argues that Bria's liability for negligent entrustment dictates use of the truck on the date in question.[1] Keown is correct to assert that negligent entrustment of a vehicle

---

[1] Keown made another argument that may be disposed of quickly. Grinnell admitted that if its named insured, Ernsting, was found liable for negligent entrustment, the insurer would have a duty to indemnify him. Keown latches onto this admission and seems to argue what is good for the goose is good for the gander. However, such admission has no bearing on the Court's interpretation of use, as Ernsting's potential coverage would stem from his *ownership* of the truck that is expressly provided for in the policy.

is predicated upon the right of control; "in essence, if the actor does not have an exclusive or superior right of control, no entrustment of the property can occur." *Zedella v. Gibson*, 650 N.E.2d 1000, 1003 (Ill.1995).  However, the control prerequisite to entrustment liability is broader than the control *of operation* regarding use.  It is quite possible for one to be in control of property for purposes of negligent entrustment but not for purposes of use regarding insurance coverage.  This is because the act of entrustment and control pertaining thereto gives rise to entrustor liability, not operation or the control of operation of a vehicle.  Indeed, while a Jackson County jury found Bria controlled the vehicle to the extent she could negligently entrust it to her husband, she did not control its operation on the date of the accident for the reasons aforementioned.  Accordingly, Bria does not constitute an insured under the express terms of Grinnell's policy

## II.     The Illinois Omnibus Statute

### A.     The Unambiguous Text of the Statute Mandates Coverage

Pursuant to the Illinois Safety and Family Financial Responsibility Law, every motor vehicle liability policy issued in the state "shall insure the person named therein and any other person using or *responsible for the use* of such motor vehicle . . . with the express or implied permission of the insured . . . ."  625 ILL. COMP. STAT. ANN. 5/7-317(b)(2) (West 2009) (emphasis added).  This mandate is better known as the Illinois omnibus statute or clause.  In essence, it establishes a broad "initial permission" rule that "once the owner or named insured of an automobile liability insurance policy . . . gives another individual permission to use the vehicle (the initial permitee), any person subsequently given permission to drive the vehicle by the initial permitee is also covered under the policy, barring theft or tortious conversion."

*Founders Ins. Co. v. Contreras*, 842 N.E.2d 177, 178 (Ill. App. Ct. 2005). The Illinois Supreme Court has made clear that an omnibus clause will be read into every policy subject to the terms of the statute, even if the policy makes no mention of omnibus coverage. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Group*, 695 N.E.2d 848, 851 (Ill. 1998).

In the instant case, Bria falls under the explicit language of the Illinois omnibus statute. As directed by the Illinois Supreme Court in *State Farm v. Universal Underwriters,* the Court must read the omnibus language into Ernsting's policy. The omnibus clause and relevant case law make clear that Bria would have been covered had she been using the vehicle at the time of the accident or that Brett would have been covered had he not fallen under an exclusion to coverage. However, these issues are not before the Court. The parties have stipulated that Bria had implied permission from her father to use the truck, and the Court has already held that she was not using the truck on the date of the accident; therefore, the unique issue before the Court is whether Bria, even though she was nowhere near the scene of the accident when it occurred, was "responsible for the use of" her father's truck so that omnibus coverage is warranted.[2] The Court holds that she was.

The Court cannot fathom a reason why Bria would not have been responsible for the use of the truck and will not attempt to make one up. Shortly before Brett was involved in the accident, Bria had borrowed the truck from her father, as she had done several times in the past.

---

[2]In his Memorandum (Doc. 22) and Reply (Doc. 29), Keown cites to several cases that are inapposite to the matter before the Court. While this case deals with an initial permitee's invocation of the omnibus statute despite her non-use of the truck, Keown references cases that address secondary permitees and omnibus coverage. *See, e.g.*, *Md. Cas. Co. v. Iowa Nat. Mut. Ins. Co.*, 297 N.E.2d 163 (Ill. 1973); *Harry W. Kuhn, Inc. v. State Farm Mut. Auto. Ins. Co.*, 559 N.E.2d 45 (Ill. App. Ct. 1990); *Founders Ins. Co. v. Am. Country Ins. Co.*, 851 N.E.2d 120 (Ill. App. Ct. 2006).

Regardless of legal liability or any concepts pertaining thereto, Bria still had to explain to her father what had happened with his truck following the accident or, at the very least, answer to her father upon inquiry of the truck's whereabouts. This status smacks of common sense notions of responsibility, especially when one considers the definition of its adjective form. "Responsible" is defined as "correspondent or answering to something" or "answerable accountable (*to* another *for* something); liable to be called to account." *Oxford English Dictionary* (2d ed. 1989) (emphasis in original). Indeed, Bria's relationship to her father and his truck meets both of these definitions.[3] In addition, Grinnell admits that Ernsting did not permit his daughter to allow anyone else to drive the truck, which further supports the notion that responsibility regarding its operation rested greatly, if not entirely, with her.

As Keown correctly points out, it is difficult to believe that a Jackson County jury would have found Bria liable for negligently entrusting the truck to Brett if she did not bear at least *some* responsibility for its use. The statute in question does not limit omnibus coverage to those with substantial or sole responsibility; rather, the Illinois General Assembly implemented broad language in the omnibus statute. The Court construes its meaning accordingly.

In an effort to turn the tide of liability, Grinnell points to nonbinding reasoning of the Colorado Court of Appeals, which interpreted an identical omnibus statute by stating that "one may be said to be 'responsible' for a car's use if, for example, such use arises out of an employer-employee relationship and the person uses the car during the course and scope of employment." *Mid-Century Ins. Co. V. Heritage Drug, LTD.*, 3 P.3d 461, 464 (Colo. Ct. App.

---

[3]This same logic and understanding applies with equal force to Bria's relationship to Keown.

1999).  However, the facts before the Court are different from those in *Mid-Century*, and the Court notes that *Mid-Century*'s understanding of responsibility is merely illustrative and not exhaustive.

**B.       Statutory Construction Principles Further Dictate Coverage**

While the exact language of the omnibus statute cannot be found in Grinnell's policy, the Illinois legislature mandated that it must be read as part of its terms.  *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Group*, 695 N.E.2d 848, 851 (Ill. 1998).  The Court does not find "responsible for the use of [the named] motor vehicle" to be ambiguous; however, assuming *arguendo* it was found to be ambiguous, such language (as part of the policy) must be construed in favor of the insured.  *Johnson v. Davis*, 883 N.E.2d 521, 527 (Ill. App. Ct. 2005).  Therefore, if responsibility is subject to more than one reasonable interpretation, it must be read in favor of Bria.  This would include an understanding that she was responsible for her father's truck, and coverage would follow accordingly.

**C.       The Purpose of the Omnibus Statute Lends Credence to the Court's Ruling**

The purpose of the omnibus statute is "to protect the public by ensuring that adequate resources are available to compensate for injuries sustained as a result of automobile accidents." *Founders*, 842 N.E.2d 177, 178 n.1 (citing *State Farm Mut. Auto. Ins. Co. v. Hertz Claim Mgmt. Corp.*, 289 N.E.2d 407, 411 (Ill. App. Ct. 2003)).  In other words, the Illinois legislature "merely intended to insure that the common and often unavoidable practice of entrusting one's vehicle to someone else does not foreclose an injured party from obtaining payment for otherwise covered losses resulting from operation of the vehicle."  *Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1184 (Ill. 2005).

Here, the Court's mandate of coverage is appropriate and comports with the well-defined public policy of the omnibus statute. A Jackson County jury found that Keown suffered serious injuries and sustained $600,000 in damages. In addition, the Court notes that, if Bria is not insured by Grinnell, then Grinnell will have escaped coverage for all three of the original defendants in the Jackson County lawsuit. In enacting the omnibus statute, the Illinois legislature sought to ensure that injured persons, including Keown, would not be barred from accident recovery due to the happenstance that the named insured was not behind the other driver's seat. The omnibus statute's purpose is one of public protection, and the Court will see to that intention by mandating coverage here. Of course, coverage will not be required where it is improper or contrary to law, but that is not the case before the Court.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Keown's Motion for Judgment on the Pleadings (Doc. 21). The Court notes that, while Grinnell has a duty to indemnify pursuant to this Order, the monetary extent of such duty remains an issue. As such, the Court **ORDERS** Keown to submit a brief regarding the financial liability of Grinnell no later than October 23, 2009. Grinnell will be given ten weekdays to respond, and Keown will be given five weekdays to reply.

**IT IS SO ORDERED.**
**DATED: October 2, 2009**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**