UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GRINNELL SELECT INSURANCE COMPANY, *a corporation*,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIA GLODO and LARRY KEOWN,<br><br>    Defendants. | Case No. 08-cv-891-JPG |
| LARRY KEOWN,<br><br>    Counter Claimant,<br><br>    v.<br><br>GRINNELL SELECT INSURANCE COMPANY, *a corporation*,<br><br>    Counter Defendant. | Case No. 08-cv-891-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant/Counter Claimant Larry Keown's (hereinafter "Keown") Motion for Grinnell Select Insurance Company to Fully Indemnify Bria Glodo (in the Amount of $600,000) and Memorandum in Support Thereof (Doc. 31). Plaintiff/Counter Defendant Grinnell Select Insurance Company (hereinafter "Grinnell") filed a Response, to which Keown did not file a reply. For the following reasons, the Court **DENIES** the instant motion.

## BACKGROUND

On October 2, 2009, the Court entered a Memorandum and Order (Doc. 30), wherein it granted Keown's Motion for Judgment on the Pleadings (Doc. 21) and held that Grinnell had a

duty to indemnify Defendant Bria Glodo (hereinafter "Bria") under the terms of its Personal Auto Policy Number 9494005853.[1] [2] (*See* Doc. 2-3).  While the motion for judgment on the pleadings and correspondent briefing addressed the *existence* of a duty to indemnify, the parties did not explicitly address the *extent* of said duty.  However, detecting disagreement with respect to the latter, the Court ordered the submission of relevant briefing; as such, the sole issue currently before the Court is the monetary extent of Grinnell's duty to indemnify Bria.

The portions of the policy at issue are as follows.  On the policy's first "Auto Declarations" page, Grinnell's coverage and limit of liability for the combined liability of its insured is listed at $300,000 for each accident.  (Doc. 2-3, p. 2).  Next, the beginning of Part A of the policy, concerning liability coverage, explains a few of Grinnell's obligations thereunder:

> **Insuring Agreement**
> **A.** [Grinnell] will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident.  Damages include prejudgment interest awarded against the insured. [Grinnell] will settle or defend, as [it] consider[s] appropriate, any claim or suit asking for these damages.  In addition to [its] limit of liability, [Grinnell] will pay all defense costs [it] incur[s]. [Greinnell's] duty to settle or defend ends when [its] limit of liability for this coverage has been exhausted by payment of judgments or settlements.  [Grinnell has] no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy.

*Id*. at p. 7 (quotations omitted).  An endorsement to Part A would remove the second sentence regarding prejudgment interest.  *Id*. at p. 18.  Finally, Part A contains a "Limit of Liability"

---

[1]Specifically, the Court found that, while Grinnell did not have a duty to indemnify Bria under the express terms of the insurance policy, Illinois' omnibus statute mandated indemnification.  *See* 625 ILL. COMP. STAT. ANN. 5/7-317(b)(2) (West 2009) (stating that every motor vehicle liability policy issued in the state "shall insure the person named therein and any other person using or responsible for the use of such motor vehicle . . . with the express or implied permission of the insured . . . .").

[2]The named insured under said policy was Terry Ernsting, Bria's father.

section, which a subsequent endorsement to the policy would amend to read as follows: "The limit of liability shown . . . in the Declarations for Liability Coverage is [Grinnell's] maximum limit of liability for all damages resulting from any one auto accident. . . . ."  *Id.* at p. 24.

In short, Keown argues that an ambiguity exists in the policy, rendering Grinnell liable for the full amount of a $600,000 Jackson County, Illinois, jury verdict entered against Bria.[3] Grinnell argues that its policy could not be clearer, and the express terms therein cap any liability at $300,000.

## **ANALYSIS**

Under Illinois law, the interpretation of an insurance policy, even an ambiguous policy, is a question of law.  *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms.  *River*, 160 F.3d at 1169;  *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997); *Crum & Forster*, 620 F.3d at 1078.   If  any ambiguity exists, the ambiguity must be construed in favor of the insured and against the insurer, who drafted the policy.  *River*, 160 F.3d at 1169;  *Allen*, 128 F.3d at 466; *Johnson v. Davis*, 883 N.E.2d 521, 527 (Ill. App. Ct. 2005).  To determine if an ambiguity exists, the Court must ask whether the policy, taken as a whole and reading all parts in light of the other parts, is susceptible to more than one reasonable interpretation.  *River*, 160 F.3d at 1169; *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).

---

[3]The jury found that Bria had negligently entrusted her father's truck to her husband, Brett Glodo.

The Court has reviewed the policy at issue in its entirety and holds that it is unambiguous as to the extent of Grinnell's duty to indemnify. The first "Auto Declarations" page makes clear that, in the event of a single accident involving the insured vehicle, Grinnell may be liable for up to $300,000. After Bria had a $600,000 Jackson County jury verdict entered against her and this Court subsequently held that Bria was an insured under the policy, Grinnell's duties to defend and indemnify under Part A kicked in. However, pursuant to the terms therein, Grinnell's duty to indemnify would end "when [its] limit of liability for . . . coverage [had] been exhausted by payment of judgments or settlements," and an endorsement to Part A would retain this restriction. (Doc. 2-3, p. 7, 18) As discussed *supra*, said limit of liability is later chronicled in Part A under the, appropriately enough, "Limit of Liability" section. The amended incarnation of this section explicitly states that the "Auto Declarations" will be the "maximum limit of liability for all damages resulting from any one auto accident," effectively limiting Grinnell's potential liability in a single accident to $300,000. (Doc. 2-3, p. 24). Put another way, in light of the policy's unambiguous nature, the plain and ordinary meaning of its terms will cap Grinnell's liability at $300,000.[4]

Due to a general lack of organization, cohesion, and conciseness in Keown's motion and memorandum, the Court found it difficult to discern his specific arguments. Apparently, counsel for Grinnell experienced this same difficulty. Nevertheless, as the Court understands it, Keown makes the following two assertions: 1) the "Insuring Agreement" of Part A, spelled out *supra*, is generally ambiguous, necessitating an interpretation that Grinnell's "limit of liability" equates to

---

[4] Per the terms of the policy and the relevant endorsement, the $300,000 does not include any defense costs incurred by Grinnell. However, Grinnell is not liable for any prejudgment interest awarded against Bria.

the extent to which its insured is "legally responsible"[5]; and 2) the endorsement to the policy concerning the "Limit of Liability" section of Part A further renders the policy ambiguous and dictates an interpretation in Bria's favor. It cannot be ignored that Grinnell's second argument is premised on the misunderstanding that the original insurance policy did not contain a "Limit of Liability" section in Part A. (Doc. 31, p. 7) ("[Y]et there is no limit of liability provision in Part A to replace."). However, this is simply not the case. (*See* Doc. 2-3, p. 9). Accordingly, Keown's second argument falls far short in demonstrating ambiguity in Grinnell's policy. The same can be said of Keown's first contention. For the reasons discussed above, Part A is hardly ambiguous, although discerning Grinnell's duty to indemnify does require minor cross-referencing within the policy. Furthermore, if one were to follow Keown's argument through to its logical conclusion, Grinnell would be liable for the amount of *any* verdict rendered by the Jackson County jury. The Court's interpretation recognizes that, in underwriting the policy at issue, Grinnell was not handing a blank check over to its insured.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Keown's Motion for Grinnell Select Insurance Company to Fully Indemnify Bria Glodo (in the Amount of $600,000) (Doc. 31). The Court notes that its final judgment will recognize this ruling.

**IT IS SO ORDERED.**
**DATED: January 6, 2010**                                                 s/ J. Phil Gilbert
                                                                           **J. PHIL GILBERT**
                                                                           **DISTRICT JUDGE**

---

[5] And, of course, Bria is legally responsible for the $600,000 Jackson County jury verdict entered against her.